## JACKSON *v.* TAYLOR, ACTING WARDEN.

No. 619. Argued April 30, 1957.—Decided June 3, 1957.

570

*Urban P. Van Susteren* argued the cause and filed a brief for petitioner.

*Ralph S. Spritzer* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Olney, Beatrice Rosenberg* and *James W. Booth.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is a habeas corpus proceeding in which petitioner, a soldier, attacks the validity of a sentence of 20 years he is now serving as the result of his conviction by an Army court-martial of the offense of attempted rape. While serving in the United States Army in Korea, he was found guilty by a general court-martial of the separate offenses of premeditated murder and attempted rape of a Korean woman. He was given an aggregate sentence [1] of life imprisonment for both offenses. The Army board of review found "incorrect in law and fact" the court-martial finding of guilty on the murder charge, but it approved the guilty finding for attempted rape. As to the sentence, the board found "that only so much of the approved sentence as provides for dishonorable discharge, total forfeitures, and confinement at hard labor for 20 years is correct in law and fact." As so modified,

---

[1] The Manual for Courts-Martial, United States (1951), App. 8, at 521, specifically provides, *inter alia:* "The court will adjudge a single sentence for all the offenses of which the accused was found guilty." This sentence is known as an "aggregate" or "gross" sentence. A court-martial may not impose separate sentences for each finding of guilt, but may impose only a single, unitary sentence covering all of the guilty findings in their entirety, no matter how many such findings there may be.

it approved the sentence. *United States* v. *Fowler,* 2 C. M. R. 336. The petitioner makes no attack on his original conviction on the attempted rape charge and its affirmance by the board. But he attacks the sentence of the board alleging that "the action of the Review Board in reserving twenty (20) years of the life sentence imposed by the Court-Martial for the crime of murder, even though it had reserved and set aside the conviction, was null and void." The District Court denied the writ and discharged the rule to show cause, *Jackson* v. *Humphrey,* 135 F. Supp. 776, holding that the board of review on reversing the murder conviction, properly modified the sentence and was not required to order a new trial or to remand the case for resentencing by the general court-martial. The Court of Appeals, in a unanimous opinion, affirmed. *Jackson* v. *Taylor,* 234 F. 2d 611. It held that the board of review upon affirming the attempted rape conviction was authorized to "affirm . . . such part or amount of the sentence, as it finds correct," citing Article 66 (c) of the Uniform Code of Military Justice, 64 Stat. 128, 50 U. S. C. § 653 (c). We believe the sentence must stand.

Petitioner was tried with two other soldiers and each was convicted of the same offenses, premeditated murder and attempted rape. Each was also sentenced to life imprisonment. The record of the trial was then forwarded to the convening authority where the convictions and sentences were approved. In accordance with military procedure, the record was then forwarded with the convening authority's approval to a board of review in the office of the Judge Advocate General of the Army. That board, as already stated, found the murder convictions unsupported by the record and set them aside, but sustained the convictions for attempted rape and modified the sentences. The soldiers then sought further review by petition before the United States Court of Military

Appeals. No question regarding the authority of the review board to modify the sentences was raised and the petition was denied without opinion. *United States* v. *Fowler,* 1 U. S. C. M. A. 713. The soldiers, having started to serve their sentences, were held in different prisons. Each filed a writ of habeas corpus in the district in which he was imprisoned and each raised the same issue of the authority of the board of review to sentence in the manner described. A conflict between the Circuits has resulted [2] and we granted certiorari, limited to the gross sentence question, not only to resolve this conflict but to settle an important question in the administration of the Uniform Code. 352 U. S. 940.

Petitioner claims no deprivation of constitutional rights. He argues only that under military law the board of review should have ordered either a rehearing or that he be released because it was without authority to impose the 20-year sentence.

The review board derives its power from Article 66 of the Uniform Code of Military Justice, 64 Stat. 128, 50 U. S. C. § 653.[3] We are concerned more particularly with subsection (c) of that section. It provides:

"(c) In a case referred to it, the board of review shall act only with respect to the findings and sen-

---

[2] Carl De Coster, one of the codefendants with petitioner, was released on an order of the Court of Appeals for the Seventh Circuit. See *De Coster* v. *Madigan,* 223 F. 2d 906 (1955). The other codefendant, Harriel Fowler, was denied release by the Court of Appeals for the Fifth Circuit. See *Wilkinson* v. *Fowler,* 234 F. 2d 615 (1956). While no petition was filed in the *De Coster* case, we granted certiorari in both the petitioner's and Fowler's cases.

[3] Since this action was filed this section has been revised and recodified as 70A Stat. 59, 10 U. S. C. (Supp. IV) § 866. The changes in language are not pertinent to this case. Other sections of the Uniform Code are cited in the form and source in which they appeared during the course of this litigation. The Uniform Code now appears in 70A Stat. 36–78, 10 U. S. C. (Supp. IV) §§ 801–934.

tence as approved by the convening authority. It shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

Here the board relied on its power to "affirm . . . such part or amount of the sentence, as it finds correct . . . ." Petitioner argues, however, that the 20-year sentence was not a "part or amount" of the sentence imposed by the court-martial. He supports this by reference to the action of the law officer of the court-martial who, after the findings of guilt were returned, advised its members in open court of the punishment it might impose. In view of the finding on the murder charge, he told the court-martial it had only two alternatives, a death sentence or life imprisonment. Art. of War 92, 62 Stat. 640. He made no reference to the punishment for attempted rape, the maximum for which is 20 years. Since the court-martial was required to impose a single sentence covering both of the guilty findings,[4] it entered a life sentence. Petitioner claims there was no sentence on the attempted rape conviction and, therefore, the entry of a 20-year sentence thereon by the board was an entirely new and independent imposition which was beyond its power. He bases this conclusion wholly on deduction. He contends that since the law officer advised the court-martial only as to the punishment for murder it follows that it did not sentence him on the attempted rape charge. But why should the officer go through the useless motion

---

[4] See note 1, *supra.*

of instructing on the attempted rape when the court-martial by law was required to impose a sentence of death or life imprisonment? The sentence could have been no heavier unless it were death. What possible good would it have done for the court-martial, if it had been authorized, to add 20 or any other number of years onto a life sentence? In addition to the fact that the Uniform Code authorizes no such sentence we should not construe the Act of Congress to require the doing of a useless act.

But, the petitioner says, simple arithmetic shows that no sentence was imposed on the attempted rape finding. He reasons that the offense of premeditated murder carries a minimum punishment of life imprisonment, the exact sentence he received. The sentence therefore included no punishment covering the attempted rape finding he claims. It is true that the sentence was not broken down as to offenses. That is not permitted. However, the petitioner in his analysis overlooks entirely the requirement of military law that only the entry of a single gross sentence for both of the offenses is permitted. This Court has approved this practice. *Carter* v. *McClaughry,* 183 U. S. 365, 393 (1902). See also *McDonald* v. *Lee,* 217 F. 2d 619, 622 (1954); Winthrop, Military Law and Precedents (2d ed. 1920), 404. The sentence here was a gross sentence. It covered both the convictions. What the petitioner would have us do is to strike down this long practice, not only approved over the years by the Congress but by our cases. This we cannot do.

The question remains whether the board had the authority to modify the life sentence to 20 years after the murder conviction was set aside. Reviewing authorities have broad powers under military law.[5] Unlike a

---

[5] For a detailed analysis and history of review powers under military law see Fratcher, Appellate Review in American Military Law, 14 Mo. L. Rev. 15 (1949).

civilian trial in most jurisdictions, the initial sentence under military law is imposed by the members of the court-martial. Otherwise the court-martial performs functions more like those of a jury than a court. It is composed of laymen. See Art. 25 of the Uniform Code, 64 Stat. 116, 50 U. S. C. § 589. The powers of review, modification, and sentence-adjustment under the Uniform Code rest elsewhere than on this body of laymen.

Review of a court-martial conviction is first provided by the convening authority—the commanding officer who directed that the case be tried before a court-martial. He is empowered to reduce a sentence though he cannot increase it. He can weigh facts, determine credibility of witnesses, disapprove findings of guilt which he believes erroneous in law or fact, and determine sentence appropriateness without regard to what the court-martial might have done had it considered only the approved findings. Art. 64 of the Uniform Code, 64 Stat. 128, 50 U. S. C. § 651. He has other broad powers. See Manual for Courts-Martial, United States (1951), c. 17. Here the convening authority approved the action of the court-martial.

The next stage of review is that with which we are particularly concerned. It is conducted by the board of review composed of legally-trained officers.[6] Such boards first received statutory recognition in 1920. Art. of War 50½, 41 Stat. 797–799. At that time Congress gave them power to review, with the Judge Advocate General, records for legal sufficiency. By 1949 this power

---

[6] Art. 66 (a) of the Uniform Code, 64 Stat. 128, 50 U. S. C. § 653 (a) provides:

"(a) The Judge Advocate General of each of the armed forces shall constitute in his office one or more boards of review, each composed of not less than three officers or civilians, each of whom shall be a member of the bar of a Federal court or of the highest court of a State of the United States."

was increased to weigh facts, though, as petitioner argues, these boards still did not have power to determine sentence appropriateness. Art. of War 50 (g), 62 Stat. 637. Such power was, however, given to the Judge Advocate General and a Judicial Council.[7]

Against this background of broad powers of review under military law, Congress began the drafting of the new Uniform Code of Military Justice. Their work culminated, so far as we are here concerned, with Article 66 (c), *supra*. Petitioner finds the language of this section ambiguous and argues that any ambiguity must be resolved in favor of the accused. That would be true if there were ambiguity in the section. But the words are clear. The board may "affirm . . . such part or amount of the sentence, as it finds correct . . . ." That is precisely what the review board did here. It affirmed such part, 20 years, of the sentence, life imprisonment, as it found correct in fact and law for the offense of attempted rape. Were the words themselves unclear, the teachings from the legislative history of the section would compel the same result.

The Uniform Code was drafted by a committee chairmanned by Professor Edmund M. Morgan, Jr. In testifying before the Senate Subcommittee which considered the bill, Professor Morgan stated with reference to the review board that it now

> "has very extensive powers. It may review law, facts, and practically, sentences; because the provisions stipulate that the board of review shall affirm only so much of the sentence as it finds to be justified by the whole record. It gives the board of review . . . the power to review facts, law and sen-

---

[7] See Art. of War 51 (a), 62 Stat. 638, and Art. of War 49, 62 Stat. 635.

tence . . . ." Hearings before a Subcommittee of the Senate Committee on Armed Services on S. 857 and H. R. 4080, 81st Cong., 1st Sess. 42.

Military officials opposed giving the review boards power to alter sentences. *Id.*, at 262, 285. The Subcommittee nevertheless decided the boards should have that power. *Id.*, at 311. The Committee Report to the Senate augments the conclusion that the boards of review were to have the power to alter sentences.[8] A study of the legislative history of the Code in the House of Representatives leads to the same conclusion. See H. R. Rep. No. 491, 81st Cong., 1st Sess. 31; 95 Cong. Rec. 5729. Article 66 was enacted in the language approved by the committees. It is manifest then that it was the intent of Congress that a board of review should exercise just such authority as was exercised here.[9]

Boards of review have been altering sentences from the inception of the Code provision. These alterations have been attacked but have found approval in the courts as

---

[8] "The Board of Review shall affirm a finding of guilty of an offense or a lesser included offense . . . if it determines that the finding conforms to the weight of the evidence and that there has been no error of law which materially prejudices the substantial rights of the accused. . . . The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces." S. Rep. No. 486, 81st Cong., 1st Sess. 28.

[9] Commentators have recognized this power of sentence review since the enactment of the Code. See, *e. g.*, Currier and Kent, The Boards of Review of the Armed Services, 6 Vand. L. Rev. 241 (1953). "The greatest single change brought about in the powers and duties of the boards of review by the Uniform Code of Military Justice is the power of the board to affirm only so much of the sentence in a given case as it finds appropriate." *Id.*, at 242. See also 65 Yale L. J. 413.

is shown by the list of cases collected in the opinion of Judge Hastie in the Court of Appeals. 234 F. 2d, at 614, n. 3. Petitioner objects, however, that the board of review should not have imposed the maximum sentence for attempted rape because the court-martial might have imposed a lesser sentence had it considered the matter initially. But this is an objection that might properly be addressed to Congress. It has laid down the military law and it can take it away or restrict it. The Congress could have required a court-martial to enter a sentence on each separate offense just as is done in the civilian courts. The board of review would then know the attitude of the court-martial as to punishment on each of its findings of guilt. But this the Congress did not do. The argument, therefore, falls since it is based on pure conjecture. No one could say what sentence the court-martial would have imposed if it had found petitioner guilty only of attempted rape. But Congress avoided the necessity for conjecture and speculation by placing authority in the board of review to correct not only the findings as to guilt but the sentence as well. Likewise the apportionment of the sentence that the court-martial intended as between the offenses would be pure speculation.[10] But because of the gross sentence procedure in military law we need not concern ourselves with these problems. Military law

---

[10] Petitioner complains that the 20-year sentence for attempted rape was excessive. He argues that because the court-martial gave him the minimum sentence for premeditated murder, it would not have given the maximum sentence for attempted rape. We need not speculate on what the court-martial would have done, nor will we interfere with the discretion exercised by the board of review. It held that in the "vicious circumstances of this case," 20 years was an appropriate sentence. Furthermore, since the sentence was legally imposed, its severity is not reviewable on habeas corpus in the civil courts. *Carter* v. *McClaughry*, 183 U. S. 365, 401 (1902).

provides that one aggregate sentence must be imposed and the board of review may modify that sentence in the manner it finds appropriate. To say in this case that a gross sentence was not imposed is to shut one's eyes to the realities of military law and custom.

Finally the petitioner suggests that the case should be remanded for a rehearing before the court-martial on the question of the sentence. We find no authority in the Uniform Code for such a procedure and the petitioner points to none.[11] The reason is, of course, that the Congress intended that the board of review should exercise this power. This is true because the nature of a court-martial proceeding makes it impractical and unfeasible to remand for the purpose of sentencing alone. See *United States* v. *Keith*, 1 U. S. C. M. A. 442, 451, 4 C. M. R. 34, 43 (1952). Even petitioner admits that it would now, six years after the trial, be impractical to attempt to reconvene the court-martial that decided the case originally. A court-martial has neither continuity nor situs and often sits to hear only a single case. Because of the nature of military service, the members of a court-martial may be scattered throughout the world within a short time after a trial is concluded. Recognizing the

---

[11] The United States Court of Military Appeals in *United States* v. *Field*, 5 U. S. C. M. A. 379, 18 C. M. R. 3 (1955), hesitatingly suggested in *dictum* that a convening authority might return a case to a court-martial solely for the purpose of a reassessment of sentence on the findings of guilt affirmed by him. The court indicated that such a practice would be unlikely for "obvious and compelling reasons of a practical character." *Id.*, at 385, 18 C. M. R., at 9. It explicitly refused to express an opinion concerning the desirability of the practice. There, of course, was no suggestion that the practice was mandatory for the convening authority has, just as has the board of review, the power to modify a sentence to make it appropriate. See also *United States* v. *Voorhees*, 4 U. S. C. M. A. 509, 543, 16 C. M. R. 83, 117 (1954).

impossibility of remand to the same court-martial, petitioner suggests as an alternative that the case should be remanded for a rehearing before a new court-martial.[12] He admits that it would now be impractical for such a new court-martial to hear all of the evidence, and that the court would have to make its sentence determination on the basis of what it could learn from reading the record. Such a procedure would merely substitute one group of nonparticipants in the original trial for another. Congress thought the board of review could modify sentences when appropriate more expeditiously, more intelligently, and more fairly. Acting on a national basis the board of review can correct disparities in sentences and through its legally-trained personnel determine more appropriately the proper disposition to be made of the cases. Congress must have known of the problems inherent in rehearing and review proceedings for the procedures were adopted largely from prior law. It is not for us to question the judgment of the Congress in selecting the process it chose.

*Affirmed.*

---

[12] It is well to point out that the Uniform Code permits the convening authority under limited circumstances to return a case for "reconsideration and revision" to a court-martial composed of "only . . . the members of the court who participated in the findings and sentence." See Art. 62 of the Uniform Code, 64 Stat. 127, 50 U. S. C. § 649, and Manual for Courts-Martial, United States (1951), at 130. This would be impossible after the passage of time in nearly every case since the original court-martial could not be reassembled. On the other hand, if resentencing is a limited type of rehearing, the Uniform Code requires the rehearing to "take place before a court-martial composed of members *not* members of the court-martial which first heard the case." (Emphasis added.) Art. 63 of the Uniform Code, 64 Stat. 127, 50 U. S. C. § 650. Such a court-martial would be no more capable—if as capable—as a board of review.

MR. JUSTICE BRENNAN, with whom THE CHIEF JUS-
TICE, MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join,
dissenting.

I am unable to see how the action of the Board of
Review can fairly be characterized as other than an
original imposition of sentence by the Board for the
offense of attempted rape. The Uniform Code of Mili-
tary Justice grants no power to the Board to impose orig-
inal sentences. 64 Stat. 128, 50 U. S. C. § 653. That
power is reserved exclusively to the court-martial. There
was, therefore, no valid gross sentence embracing at-
tempted rape upon which the Board's power to remit an
excessive portion could operate. I subscribe to what
Judge Major said in the similar case of *De Coster* v.
*Madigan,* 223 F. 2d 906, 909–910 (C. A. 7th Cir. 1955),
in which De Coster was allowed habeas corpus and
ordered discharged:

> ". . . While the court-martial obviously had juris-
> diction of plaintiff and the offenses with which he was
> charged, it did not fully and fairly deal with him.
> The Law Officer instructed the court-martial that the
> *minimum* sentence which could be imposed on the
> murder charge was life imprisonment. But the Law
> Officer gave no instructions as to the punishment
> which could be imposed on the attempted rape
> charge. The court-martial found plaintiff guilty of
> both murder and attempted rape, but its sentence
> was life-imprisonment, the minimum sentence for
> the murder charge alone. Of course, any sugges-
> tion that the court-martial should have sentenced
> plaintiff for a term of life plus twenty years would
> be ridiculous, but equally so is the assertion that the
> court-martial did or intended to impose any part of
> its sentence for attempted rape. It lacked even the

necessary instructions upon which such award of punishment would have to be based. Imposition of sentence by the proper authority is an essential step in administration of criminal justice. Here, under the statute, only the court-martial was authorized to take this step; it failed to do so."