**CORRECTED COPY**

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, HAYES, and MORRIS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DELCARLO D. MCCULLOUGH**
**United States Army, Appellant**

ARMY 20220376

Headquarters, 7th Infantry Division
Robert E. Murdough, Military Judge
Lieutenant Colonel Aaron L. Lykling, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Justin L. Watkins, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Captain Justin L. Watkins, JA (on brief on specified issue).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Timothy R. Emmons, JA; Captain Lisa Limb, JA (on brief); Colonel Christopher B. Burgess, JA; Major Timothy R. Emmons, JA (on brief on specified issue).

30 April 2024[1]

---------------------------------
SUMMARY DISPOSITION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

PENLAND, Senior Judge:

A military judge, sitting as a special court-martial, convicted appellant, in accordance with his pleas, of one specification of failing to go to his appointed place of duty, five specifications of willfully disobeying a superior commissioned officer, two specifications of disobeying a noncommissioned officer (NCO), one

---

[1] Corrected

specification of disrespect toward a noncommissioned officer, and one specification of drunken physical control of a vehicle, in violation of Articles 86, 90, 91, and 113, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, 891, 913 [UCMJ]. He sentenced appellant to a bad-conduct discharge and 99 days of confinement.

We review the case under Article 66, UCMJ. Appellant raises two assignments of error, one of which warrants discussion but no relief.[2] In light of *United States v. Scheurer*, 62 M.J. 100, 110 (C.A.A.F. 2005), we also specified for briefing whether the military judge erred by accepting appellant's plea of guilty to The Specification of Charge IV and Charge IV, drunken physical control of a vehicle. The specified issue also warrants discussion and relief.

## BACKGROUND

During the guilty plea inquiry for drunken physical control of a vehicle, appellant described sitting in his car's passenger seat and listening to music while the accessories were on but the engine was off. A document characterized as a stipulation of fact provided, in part, that two NCOs would testify they saw appellant exiting the driver's seat of his car; we interpret this part of the document as a stipulation of expected testimony, not a stipulation of fact.

During the presentencing phase, the defense tried to elicit testimony from Sergeant ▮▮▮ about the support that appellant would need to maximize his rehabilitative potential after confinement. The government objected, citing Rule for Courts-Martial [R.C.M.] 1001. The defense responded, "I'm just asking her to explain what she means by proper support." Relying on R.C.M. 1001(b)(5), the military judge sustained the objection; the defense asked no additional questions and made no proffer.

## LAW AND DISCUSSION

### 1. Drunken Physical Control of a Vehicle

This court reviews a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citing *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea – an area in which we afford significant deference. *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002).

---

[2] We have fully and fairly considered appellant's other assigned error, unreasonable post-trial delay, and remaining matters under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find they warrant neither discussion nor relief.

Appellant argues the military judge erred in accepting the guilty plea because his providence inquiry was inconsistent with the stipulation of fact (more precisely, the part of that document that contained a stipulation of expected testimony from two NCOs) and because appellant admitted to facts that were legally insufficient to establish physical control. The government argues the providence inquiry and stipulation of fact are not inconsistent because appellant's assertion he was in the passenger seat and the NCOs' expected testimony that he was in the driver's seat can both be true, as he was in the vehicle multiple times.

For a guilty plea to survive appeal, an appellant must personally admit to facts establishing criminal culpability; appellant did not do this. Instead, he admitted only that he sat in his vehicle's passenger seat while drunk. A scenario that would be legally insufficient to establish guilt in a contested case is similarly insufficient in a guilty plea. The stipulation did not cure this problem, for appellant only agreed others would testify he was in the driver's seat; he did not agree to this as a matter of fact. Taken together, appellant's providence inquiry and stipulation painted a scenario that was, at the very least, inconsistent on the question of guilt. For these reasons, the military judge erred in accepting the plea, resulting in material prejudice to appellant. *United States v. Moratalla*, 82 M.J. 1, 4 (C.A.A.F. 2021); Article 45(c), UCMJ.

### 2. R.C.M. 1001 Objection

"The accused possesses a broad right to present evidence in mitigation and extenuation during sentencing." *United States v. Perez*, ARMY 20130174, 2015 LEXIS CCA 228, at *7 (Army Ct. Crim. App. 29 May 2015) (mem. op.). Rule for Courts-Martial 1001(b) outlines what the prosecution may present at sentencing. We review a military judge's decision to exclude evidence for an abuse of discretion. *Id.* (citing *United States v. Griggs*, 61 M.J. 402, 406 (C.A.A.F. 2005). "A ruling based on an erroneous view of the law constitutes an abuse of discretion." *Griggs* 61 M.J. at 406. However, these principles apply when the defense preserves a claimed error.

Military Rule of Evidence 103 states: "A party may claim error in a ruling to admit or exclude evidence only if the error materially prejudices a substantial right of the party and...if the ruling excludes evidence, *a party informs the military judge of its substance by an offer of proof, unless the substance was apparent from the context.*" (emphasis added). While we know the topic of the disputed testimony, we do not know its substance; and it is not otherwise apparent.

Assuming arguendo the error was preserved, the military judge incorrectly interpreted R.C.M. 1001(b)(5) as limiting a defense witness's testimony during sentencing; the rule applies to the prosecution but not the defense. The government on appeal argues the military judge reached the correct result as the witness's

testimony would have been cumulative and not relevant. These alternate bases for exclusion are speculative, at best. Rule for Courts-Martial 1001(d)(1)(B) allows an accused to present matters in mitigation during their presentencing case. R.C.M. 1001(d)(1)(B). In appellant's case, the defense witness was asked what kind of non-military support appellant would need to facilitate his rehabilitative potential. We fundamentally disagree with the government's suggestion that this information would not tend to prove (or disprove) appellant's rehabilitative potential. We also note this particular defense witness's unique perspective of appellant as a former NCO colleague; considering the disputed information was not offered by any other witness, the government's post hoc cumulativeness argument is unavailing.

Despite the error - and even if we were to find it plain and obvious, but unpreserved - we conclude it did not prejudice appellant, for we are confident its exclusion did not substantially influence the adjudged sentence. *Griggs*, 61 M.J. at 410. (*See United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). The military judge sentenced appellant to a total of 99 days of total confinement, but each of the segmented sentences were below the plea agreement's maximum. Additionally, while the military judge sentenced appellant to a bad conduct discharge as required by the plea agreement, he wrote a detailed recommendation that the convening authority suspend that punishment.

### 3. Sentence Reassessment

We reassess a sentence under *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013). Our superior court in *Winckelmann* established three principles:

(1) because courts-martial lack continuity and reassessment before the same court-martial that convicted the accused is impossible given the nature of military service, a service court of criminal appeals is best suited to reassess a sentence "more expeditiously, more intelligently, and more fairly" than a new court-martial. *Winckelmann*, 73. M.J. at 15. (citing *Jackson v. Taylor*, 353 U.S. 569, 579 (1957)).

(2) "in light of the experience, training, and independence of military judges, courts of criminal appeals act with broad discretion when reassessing sentences for the reasons stated in *Jackson*." *Id*. And

(3) the court considers illustrative but not dispositive factors in sentence reassessment including:

(1) Dramatic changes in the penalty landscape and exposure.

(2) Whether an appellant chose sentencing by members or a military judge alone.[3]

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

Since *Winckelmann*, the law has substantially changed plea agreements' parameters. For example, the parties may now agree to specific types and amounts of punishment. This somewhat complicates our sentence appropriateness review and reassessment, especially in cases involving an agreed-upon mandatory punitive discharge. Had the parties known appellant would be improvident to The Specification of Charge IV and Charge IV, we are far from certain whether the plea agreement would have required a punitive discharge (or whether there would have been a plea agreement at all). Applying *Winckelmann*'s principles, though, we are confident that, based on appellant's provident guilty pleas, the military judge would have sentenced him to at least 69 days of confinement.

## CONCLUSION

The finding of guilty and the segmented sentence for The Specification of Charge IV and Charge IV are SET ASIDE; the affected specification and charge are dismissed with prejudice. The remaining findings of guilty are AFFIRMED. The bad-conduct discharge is disapproved. Only so much of the sentence extending to confinement for 69 days is AFFIRMED. [4]

Judge MORRIS concurs.

HAYES, Judge, dissenting in part:

I agree with my colleagues regarding both the improvident plea to Charge IV and its specification and the lack of prejudice resulting from any error concerning the R.C.M. 1001 objection. I only part ways regarding their reassessment of the sentence after the dismissal of Charge IV and its specification.

---

[3] The *Winckelmann* court added that as a matter of logic, judges on service courts of criminal appeals are more likely to be certain about what a military judge would have decided as opposed to members.

[4] The Statement of Trial Results, as incorporated into the Judgment of the Court, is amended to reflect the response to block 29 as "Yes."

This court reassesses a sentence under the holding in *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013). While individually the remaining crimes are relatively minor, collectively they add up to a continuous disregard for military authority over a period of several months. Neither the chain of command nor medical providers attributed the pattern of misconduct to appellant's mental health condition. Further, that condition did not prompt the parties or the military judge to request or order an R.C.M. 706 inquiry. I see nothing in appellant's providence inquiry or pre-sentencing session that would cause me to disagree with their assessment. The military judge conducted a thorough inquiry into the possibility of a mental responsibility defense and appellant disclaimed any defense. Appellant further convinced the military judge that he had the mental capacity at the time of trial to understand the proceedings and cooperate intelligently in his defense.

My experience, training, and independence convince me a bad-conduct discharge still would have been adjudged in this case without the Article 113 conviction, notwithstanding the military judge's suspension recommendation.[5] This is because I am equally convinced the bad-conduct discharge would still have been a provision the convening authority insisted on in any plea agreement. The unanimous chain of command recommendations all referenced the continuous course of misconduct over several months, not the drunken operation of a vehicle, as the reason they supported the plea agreement. Further, they unanimously stated that the plea agreement was acceptable because it included a bad-conduct discharge.

While the parties' assessments are not dispositive when determining the appropriateness of the sentence, I do give significant consideration to the fact both parties agreed at the time of trial, *and both agree now*, that a bad-conduct discharge is appropriate for this case. My experience leads me to the same conclusion.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[5] Regardless of this conclusion, I commend the trial judge for taking the time to provide a recommendation to the convening authority, and particularly for providing supporting justifications.